1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   SHAW RAHMAN,                           CASE NO. C13-218-MJP

11                      Plaintiff,          ORDER GRANTING MOTION FOR
                                            SUMMARY JUDGMENT
12          v.

13   CRYSTAL EQUATION, et. al.

14                      Defendants.

15

16          This matter comes before the Court on Defendants' motion for summary judgment.  (Dkt.

17   No. 105.)  Having reviewed the motion, the response (Dkt. No. 124), the replies (Dkt. Nos. 126,

18   127), the Court GRANTS the motion and DISMISSES Plaintiff's claims.

19                                    **Background**

20          This is an employment discrimination case.  Plaintiff was a software architect hired by

21   Crystal Equation, a staffing company.  (Dkt. Nos. 98 at 2, 106-1 at 131, 169.)  Plaintiff signed

22   his employment agreement with Crystal Equation on June 10, 2011.  (Dkt. No. 107-1 at 45.)

23   That agreement set out certain aspects of the relationship, including that it was "Employment At-

24   Will."  (Id. at 171.)  He also signed a separate document, entitled "At Will Relationship."  By

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 1

1  signing the document, Plaintiff acknowledged that his employment was "not for a specified

2  period of time and can be terminated at any time for any reason, with or without cause, by me or

3  the Company.  I acknowledge that no statements or representations regarding my employment

4  can alter the foregoing."  (Id. at 46.)

5      Crystal Equation assigned Plaintiff to work for its client, AT&T, as a software architect.

6  (Dkt. No. 106-1 at 178.)  Shortly after beginning this assignment, AT&T requested Plaintiff

7  travel to Atlanta, Georgia, in order to attend a presentation.  (Id. at 165.)  Plaintiff did not believe

8  travel was part of his job description and protested the request to his superiors.  (Id. at 127.)

9  Nonetheless, he traveled to Atlanta.  (Id.)  His travel arrangements were arranged by Miles Muslin, a

10  recruiter with Crystal Equation.  (Id. at 181.)  The hotel reservation email receipt shows Plaintiff was

11  booked for two nights at the Courtyard Marriott in Atlanta, Georgia.  It does not show what room

12  Plaintiff would stay in.  (Id.)  When Plaintiff arrived at the hotel, he was assigned to room 911.  (Id.

13  at 105.)  Plaintiff requested hotel staff find another room, but none was available.  (Id.)  Plaintiff

14  claims his is stay in room 911 was religious discrimination by his employer, because his former first

15  name is Mohammad and, as a Muslim, his room placement was intended to humiliate and remind

16  him of the events on September 11, 2001.  In his deposition though, Plaintiff explained that he

17  "cannot say for sure whether [Mr. Muslin] deliberately asked for room 911."  (Id. at 104.)

18      Plaintiff appears to have worked his assignment at AT&T for several months without

19  incident.  In late fall of 2011, AT&T requested Plaintiff generate security certificates, apparently

20  after a former staff member who handled the task left AT&T.  (Dkt. Nos. 124-1 at 25-32, 106-1 at

21  52.)  Plaintiff in turn, "repeatedly told him [his supervisor Ron Barchi] I do not want to do that.

22  That's too much responsibility."  (Id. at 51.)  AT&T sought to have Plaintiff instructed on the task, to

23  increase his comfort level.  (Id. at 54.)  Nonetheless, Plaintiff refused to generate the security

24  certificates.  (Id. at 58.)

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 2

In January 2012, AT&T notified Plaintiff that his position had been eliminated:

Shaw
Looks like I am losing your position on the team. I am going to have to end your con[r]tact by the end of next week. Let your contracting firm know. . . .
It's been quite an interesting ride with all this, and [I] am glad you were on my team.
Ron

(Id. at 107-1 at 37.)

Eight months after the termination of his employment with AT&T and Crystal Equation, Plaintiff filed discrimination charges with the United States Equal Employment Opportunity Commission. (Dkt. No. 19.) Plaintiff's charge alleged "Respondent discriminated against me by booking me into room #9-11 at the Marriot [sic] hotel in Atlanta, as they were aware that my first name is Mohammad." (Id.) The charge also stated, without specification, "I was also given more responsibilities and subjected to different terms and conditions of employment." (Id.) Plaintiff received his right to sue letter in November 2012. (Dkt. No. 106-1 at 201.)

He filed this suit in February 2013, initially as two separate actions. (Dkt. No. 29.) He asserted claims for discrimination based on religion and nation origin, as well as hostile workplace, retaliation, and breach of contract claims. (Id.) The Court consolidated the cases. (Id.)

Defendants move for summary judgment on all claims.

**Discussion**

A.  Legal Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

1   Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden

2   to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H.

3   Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial

4   burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact

5   regarding an element essential to that party's case, and on which that party will bear the burden

6   of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this

7   burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence

8   showing that there is a genuine issue for trial.  Id. at 324.

9       B.  Discrimination Claims

10          Title VII makes it unlawful for an employer to "discriminate against any individual with

11  respect to his compensation, terms, conditions, or privileges of employment, because of such

12  individual's race, color, religion, or national origin."  42 U.S.C. § 2000e-2(a)(1).

13          To make out a claim for discrimination under a disparate treatment theory, the plaintiff

14  must show: (1) he belongs to a protected class; (2) he was performing according to his

15  employer's legitimate expectations; (3) he was subject to an adverse employment action; and (4)

16  similarly situated individuals outside his protected class were treated more favorably.  Cornwell

17  v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  If the plaintiff meets these

18  marks, the burden shifts to the defendant to establish a "legitimate, nondiscriminatory reason"

19  for the alleged action.  Id.  If the defendant is successful, the presumption of discrimination

20  disappears and burden shifts back to the plaintiff to establish discrimination or a dispute of fact

21  related thereto.

22          Plaintiff can meet the standard of proof required by Fed. R. Civ. P. 56(c) for a disparate

23  treatment claim in two ways.  First, a plaintiff may offer evidence, direct or circumstantial, "that

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 4

1  a discriminatory reason more likely motivated the employer" to make the challenged

2  employment decision.  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

3  Second, a disparate treatment plaintiff may alternatively offer evidence "that the employer's

4  proffered explanation is unworthy of credence." <u>Id.</u>  This method often allows a plaintiff to

5  defeat a defendant's motion for summary judgment by offering proof that the employer's

6  legitimate, nondiscriminatory reason is actually a pretext for racial discrimination. <u>Cornwell</u>, 439

7  F.3d at 1028.

8      Plaintiff fails to establish a prima facie case that Defendants discriminated against him

9  based on his religion or national origin under either method.

10     Mr. Rahman fails to demonstrate any triable issues of fact on his religious discrimination

11  claim.  Two fundamental flaws exist.  First, nothing in the record supports the notion that Crystal

12  Equation and Miles Muslin, who booked the travel arrangements, knew of Plaintiff's former

13  name.  All Plaintiff offers is conjecture: "it is prior to the job agreement conversation, that was

14  disclosed to Miles [Muslin] that plaintiff, changed his name and a copy of passport showing

15  national origin was provided to him as identification."   (Dkt. No. 124 at 9.)  Plaintiff fails to

16  offer his passport evidencing his former name, nor does he offer any admissible evidence of this

17  alleged event.[1]  Even if the Court ignores those problems with Plaintiff's claim, nothing in the

18  record shows Crystal Equation or Miles Muslin actually booked him into room 911.  Plaintiff

19  _____

20  [1]  Plaintiff fails to meet the evidentiary standards for summary judgment.  Federal Rule of Civil

21  Procedure 56(c) requires that factual propositions be supported by "affidavits or declarations," and further provides clear requirements for such testimonial support.  <u>See</u> Fed. R. Civ. P. 56(c)(4); <u>see also</u> <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988) (trial court may only

22  consider admissible evidence in ruling on a motion for summary judgment).  Plaintiff attaches several emails and other documents to his opposition to the motion for summary judgment, but no

23  foundation or authenticity is offered.  In other instances, Plaintiff makes assertions in his opposition motion wholly unsupported by the record.

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 5

1   offers the initial email confirmation from Mr. Muslin showing a general room reservation.

2   Plaintiff also points to what appears to be a final receipt from the Marriott.  But, the receipt only

3   shows he stayed in room 911, not that Crystal Equation or Miles Muslin placed him there.

4   Without proof of a predicate discriminatory act, the Court GRANTS summary judgment to

5   Defendants on this claim.

6          Plaintiff's claim for discrimination based on national origin also lacks genuine issues of

7   material fact for trial.  Plaintiff claims he was terminated from employment because of his

8   national origin.  The record does not support his claim.  First, Plaintiff fails to show that his

9   supervisor at AT&T knew of his national origin.  Indeed, the speculative nature of Plaintiff's

10  contention is apparent from his deposition testimony: "if Ron Barchi disclose it [Plaintiff's

11  name] to him [another AT&T employee and supervisor] then he would instantly know that I

12  would be from Bangladesh because Mohammad Rahman is a very common name in Bangladesh

13  and not too common in India."  (Dkt. No. 106-1 at 102.)  Other than his conjecture, nothing

14  suggests AT&T knew or perceived him to be a member of a protected class.  Second, even if the

15  Court were to accept Plaintiff's contention as true, nothing in the record suggests he was

16  terminated due to his national origin.  Consequently, he fails to make a prima facie claim for

17  employment discrimination based on national origin.

18         Plaintiff suggests his employer's allegedly non-discriminatory reason for his termination,

19  downsizing of the department, was pretext.  (Dkt. No. 124 at 12-13.)  He claims to have been

20  performing his job adequately.  (Id.)  But, Plaintiff refused to perform certain tasks requested of

21  him, even after AT&T sought to provide training.  While Plaintiff may believe he was justified in

22  refusing to perform certain tasks, Plaintiff was an at will employee and his refusal to perform

23  worked needed by AT&T does not constitute discrimination or retaliation.  This is especially true

24

1  when the record fails to show Defendants knew the facts giving rise to his discrimination claims

2  – that his former name was Mohammad or that he is from Bangladesh.

3  The Court GRANTS summary judgment to Defendants on the discrimination claims.

4  C.  Hostile Work Environment

5  Plaintiff also fails to offer evidence for trial that he was subject to a hostile work

6  environment.  His claim of a hostile work environment centers around his supervisor's requests

7  that he generate security certificates.  (Dkt. No.  124 at 17.)

8  To establish a prima facie case for a hostile-work environment claim, Plaintiff must raise a

9  triable issue of fact as to whether (1) the defendants subjected him to verbal or physical conduct

10  based on his national origin or religion; (2) the conduct was unwelcome; and (3) the conduct was

11  sufficiently severe or pervasive to alter the conditions of his employment and create an abusive

12  working environment.  Surrell v. California Water Serv., 518 F.3d 1097, 1108 (9th Cir. 2008).

13  Plaintiff cannot make it past the first step: he presents no evidence suggesting AT&T's request

14  he perform certain job functions were based on national origin, or religion.  Rahman admitted

15  this in his deposition, explain:  "the harassment is within the contractual obligation, not on the

16  discrimination based on national origin, race, or religion."  (Dkt. No. 106-1 at 119).

17  Plaintiff's claim for hostile work environment fails, and summary judgment is awarded to

18  Defendants.

19  D.  Retaliation claim

20  To prevail on a retaliation claim, a plaintiff must show: (1) that he engaged in a protected

21  activity; (2) that he suffered an adverse employment action; and (3) that there is a causal

22  connection between the protected activity and the adverse employment action.  Elvig v. Calvin

23  Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).   A Plaintiff must prove that his

24

1  protected activity was the "but-for" cause of the adverse employment action.  Univ. of Tex. Sw.

2  Med. Ctr. v. Nassar, —— U.S. ——, 133 S.Ct. 2517, 2521 (2013) (holding that "Title VII

3  retaliation claims require proof that the [employer's] desire to retaliate was the but-for cause of

4  the challenged employment action").  Under the Washington's Law Against Discrimination, a

5  plaintiff must merely demonstrate that the protected activity was a "substantial factor" in the

6  employer's decision to take the adverse employment action.  Allison v. Hous. Auth. of City of

7  Seattle, 118 Wn.2d 79 (1991).

8      Plaintiff's retaliation claim fails as a matter of law, under either Title VII or WLAD, because

9  he fails to show he engaged in a protected activity.  Plaintiff never made a complaint of

10  discrimination or otherwise opposed, in some way, conduct made unlawful by those statutes.

11  Elvig, 375 F.3d at 965.  Therefore, he cannot establish a prima facie case for retaliation.  The

12  Court DISMISSES this claim.

13      E.  Breach of Contract Claim

14      Plaintiff's breach of contract claim presents no triable issues because he fails to show Crystal

15  Equation breached their agreement with him.  Plaintiff appears to claim the agreement was

16  breached when Crystal Equation failed to provide two weeks' notice before terminating his

17  employment.  (Dkt. No. 127 at 12.)  He also claims AT&T's requests to generate security

18  certificates also breached a contract, because those tasks were not included in his job description.

19  (Id.)

20      "The touchstone of contract interpretation is the parties' intent."  Tanner Elec. Coop. v. Puget

21  Sound Power & Light Co., 128 Wn .2d 656, 674 (1996).  Washington courts follow the

22  "objective manifestation" theory of contracts.  Hearst Commc'ns, Inc. v. Seattle Times Co., 154

23  Wn.2d 493, 503 (2005).  A valid contract requires an objective manifestation of mutual assent to

24

its terms, rather than any unexpressed subjective intent of the parties.  Hearst, 154 Wn.2d at 503.

Courts will not impose obligations that the parties did not assume for themselves.  Condon v.

Condon, 177 Wn.2d 150, 162–63 (2013). A formation of a contract requires that there be an

objective manifestation of mutual assent of both parties.  P.E. Sys., LLC v. CPI Corp., 176

Wn.2d 198, 207 (2012).  Words in a contract are given their ordinary, usual, and popular

meaning unless the entirety of the agreement clearly demonstrates a contrary intent. Hearst, 154

Wn.2d at 504.

Plaintiff fails to show the first element of a contract claim, breach.  As to the assertion he was

entitled to two weeks' notice, the plain language of the Agreement between the Parties forecloses

the claim:

> Employment at-will may be terminated at the will of either the employer or the
> Employee. Employment and compensation may be terminated with or without
> cause and with or without notice at any time by you or Crystal.

(Dkt. No. 107-1 at 45.)   Likewise, Plaintiff's claim regarding a subsequent oral agreement

altering that term of his employment, is also precluded by the Agreement. (Id. at 46.) ("I

acknowledge that no statements or representations regarding my employment can alter the

foregoing [at will status].")  Plaintiff cannot make a claim for breach of contract.

Nor does Plaintiff show the job advertisement was itself an enforceable contract, which

limited the tasks AT&T could request he perform.  (Dkt. No. 106-1 at 166.)  The job

advertisement was sent to Plaintiff in an email with the explanation: "Shaw, Ronald Barchi

would like to interview Shaw Rahman for service request 52308 (View Reply).  The Vendor is

Crystal Equation Corporation…." (Id.)  The job advertisement provided a list of minimum

requirements and contained a resume submittal deadline.  (Id.)  The record before this Court

contains no evidence of mutual assent that the job advertisement constituted a contract or that the

1  parties intended to limit the scope of Plaintiff's job responsibilities to that document.  See Hearst,

2  154 Wn.2d at 504.

3       The Court GRANTS the motion as to the breach of contract claim.

4

5                           **Conclusion**

6       Because there are no genuine issues of material fact on any of Plaintiff's claims, the

7  Court GRANTS summary judgment in favor of Defendants.  The clerk is ordered to provide

8  copies of this order to all counsel.

9       Dated this 5th day of March, 2014.

10

11

12

                              Marsha J. Pechman
13                            Chief United States District Judge

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 10